The next case for argument is 19-1564 In Re Chason. I think we're ready to go. Good morning. Good morning, your honors. Let me ask you a quick housekeeping question. In the red brief at three, the government contends that you argued that both proposed claims 16 and 18 are representative, but you didn't distinguish between them. Is claim 16 representative? Is claim 18 representative? And the government says they were argued together and without distinction, and they stand and fall together. So how do you deal with that? They all essentially use the same language, so I think they are representative, your honor. There's slight differences, but for the issue that's before the court, yes, I believe so. Okay. Thank you. My name is Michael Doan. On behalf of Appellants Mark Chason, Daniel Roman Gamata, Rick Letella, and DMR International, with me is A.J. At its core, the issue before the court is whether the discussion of blending various components in the Sacrapanti reference to make a powder composition renders obvious the requirement in the various claims of the 581 application that antimicrobial organometallic additives such as zinc stearate would be dispersed homogeneously throughout a thermoset polymer host matrix once it is cured, forming a substantially homogenous solid solution. How does blending not suggest a homogenous mixture? No, your honor, I don't believe so. Blending, homogenous is a defined state of being. It's an end result. Homogeneity is Do you define it in the claims or in the spec? Is there a definition? It is referred to in the spec at paragraph 60. Well, it's referred to as distributed homogeneously throughout the polymer. We do not give a specific definition ourselves of homogenous, but in our brief, we've given various dictionary definitions for homogenous. Powder compositions, I'm reading, may also optionally be blended with flow-promoting and flow-control agents, such as external additive particles and so on. Is it no longer homogenous? If the flow-control, excuse me, are you saying if the flow-control additives are Blended. Blended. I don't know. From this, I don't know whether it would be homogenous ultimately or not, because one thing to be clear about is What Sacropani is discussing is a powder composition. What is claimed in the application is a, at least in the part of the claim that's relevant here that we're directly involved with here, is homogeneity in the polymer host matrix once it has been cured to form a substantially homogenous solid. The powder, whether the powder is homogenous or not is something that we don't claim. We don't claim a powder. We claim a homogenous polymer that coats a substrate used, for example, in hospitals or whatever on metal surfaces, and it has to be, it's important to this level, this state of the product to be homogenous throughout with the antimicrobial additives, because as the product wears on a doorknob or on a metal surface in a hospital, you want it to maintain the antimicrobial. Sacropante, I think I'm saying it right, describes blending the additives and polymer with a homogenizer. Does that imply that it's homogenous? I don't know. I believe you're referring to page 734 of the appendix. I am, yes. Yes. The homogenizer, the Brinkman homogenizer is a product. It's a product name. It has several different, it does more than just homogenize. I believe it has, it can do a dispersion, it can do an emulsion. Homogenization is just one thing. This description, although it says in here that a Brinkman homogenizer was used at one stage in this example 3, it does not state what level it was placed at, whether it was set for homogenization or some other form. Also, I would note that it does not include zinc serate at this rate. It's mixing something here, certainly, but we do not know where zinc serate is added in. This example, this entire patent is silent as to when or how these additives would be added. It doesn't teach how much to add. It doesn't teach when to add. It doesn't teach how long to stir it. It is silent as to all of this. It teaches nothing. Zinc serate, in fact, is mentioned once in this entire application, only to state that it might optionally be added. It says nothing about, it does not teach how to obtain what is ultimately achieved in the 581 application, when it's claimed in the 581 application. As I said, basically what the PTO has done is they've cobbled together pieces from the Sacropanti reference and made conclusory statements about what it teaches, but it simply does not teach how to mix the zinc serate or any other additive to reach homogeneity. In fact, it doesn't even discuss homogeneity at all in this application. In short, they just don't provide one of necessary skill in the art to obtain a polymer host matrix with antimicrobial or organic additives such as zinc serate dispersed homogeneously throughout the polymer host matrix. You'd have to experiment extensively to try and figure out how to reach this level of homogenization once the product is cured. Just because something in a powder form might be homogenous, and that's not even clear from the Sacropanti reference. They say, if I may, I'll read from the reference here, paragraph 62, on page 732 of the appendix. The government relies heavily on the statement such as external additive particles which are usually present on the surface of the powder composition. It says usually, it does not say always. Usually would indicate that it is not homogenous throughout, that it therefore lacks homogeneity. Well, I don't know. I mean, your complaint, although it cuts both ways, I guess, is you're saying the board should have and did not construe dispersed homogeneity throughout, right? Correct. Your complaint. What's your complaint construction for that term, for that phrase? For homogenous throughout? Dispersed homogeneously throughout. Your complaint is that the board didn't construe it. Well, did you offer construction, and what is that construction? To the board, we offered definitions of homogenous, and our briefs to this court as well, is composed of, for example, from Collins English Dictionary, and this is also in our brief, composed of similar or identical parts or elements of a uniform nature, similar in kind or nature, having a constant property such as density throughout. It's an end result. Have you offered that to the board as a proposed claim construction for the term dispersed homogeneously throughout? I cannot give you an answer to that on whether we gave it. Well, surely you know if a claim construction was offered. Yes, it was. And what did the board do? Where is that in the record? I'm sorry. I don't have that citation in front of me, Your Honor. And the claim also talks about substantially homogenous. Did you offer construction for that? I believe we did, Your Honor, but once again, I don't have a citation for that. Okay. Well, you might want to come up with it. We certainly will, Your Honor. But just to get back to your question about how blending, whether blending necessarily indicates homogeneity, blending is not a state as homogenous. Blending is a process which can have a number of end results. It can be lightly blended or strongly blended. For example, so if we're going to be blended until it's substantially homogenous, yes, you could blend. I mean, everything has to be mixed, but it has to be mixed to the state so it meets the definition of homogenous. And once again, it has to be homogenous in the end product, not necessarily in the powder form. Homogeneity in the powder does not necessarily indicate homogeneity in the substantially homogenous solid solution. But like I said, if you blend lightly, if you want some examples of different types of blending, for example, if you want to mix, flour may in and of itself be homogenous, but if you want it to be a different color, you might mix some dye, but you have to mix it sufficiently for the dye to be dispersed throughout the powder in order to ultimately have a baked product of the right color. So you just used the words mix sufficiently, and that's different than blend? I mean, is mix sufficiently in the claim? No, it is not. But blend is not in the claim either. The claim language is dispersed homogenously throughout. It does not talk about mixing or blending. Well, you just used the word mix for what I think you were describing in the claim. I'm not making that up. I apologize if I was unclear on that. I'm not saying that that's part of the claim. I was using that to describe different types of blending that might not necessarily result in homogeneity. In the end product, that blending can achieve various levels depending on how it is done. And it does not necessarily equate to a homogenous end result. And the claim describes or the patent describes how you achieve the result of being dispersed homogeneously throughout? It tells you how to get there, not just that you get there? Yes. So to wrap up, the important issue, like I said, is the fact that if one follows Sacrapanti, if one follows teachings of Sacrapanti, you learn it talks about mixing at various stages and mixing various elements. It does not ever teach how to mix zinc stearate. It does not teach how much to put in. It does not teach how long to put it in. It doesn't tell you at what stage to put it in. It simply does not enable one to obtain the product that is claimed in the 581 application without undue experimentation. Okay, we'll reserve the remainder of your time. Thank you. Come up with those sites when you stand back up, okay? Yes, Your Honor.  Good morning. May it please the Court. I think the Court understands the issue that blending, it either discloses the claimed homogeneity or at least renders it obvious, and certainly substantial evidence supports that finding by the Board. I'm happy to talk about anything else. Many of us in our youth were able to sufficiently homogenize margaritas. I'm sorry? I said many of us in our youth were able to sufficiently homogenize margaritas using a blender. Using a blender, right, or a homogenizer. I don't think that's also disclosed. Can you enlighten us a little about the issue of claim construction? And your friend raises it on appeal that there should have been a claim construction. What was the back and forth on claim construction, if any, before? Did they ask for one? My reading of the record didn't have, I don't recall seeing any request for a claim construction. There's discussion of construing terms in the prior art, which is really just a matter of finding out what the prior art discloses. But in terms of the terms in the claim, I don't have any. Okay, so the terms in the claim are dispersed homogeneity. You don't recall any of that. So was there an effort to get someone to construe what blending means? I know there was an argument that blending was misconstrued. I don't know that there was any, and there were dictionary definitions. Definitions is different than a construction. Right, but I don't recall seeing any construction proposed for either the terms in the prior art. So I think that the claim construction issue hasn't really been raised at the board or even here. So it seems a little bit of a red herring. Thank you. Claim construction. It is at paragraph 60, 0060, appendix 520 and 520-21. Where is it? 520-21 is from the response, and it's paragraph 60 on page 69 of the appendix. The antimicrobial organic metallic additives form a solid solution with a polymer host matrix and are distributed homogeneously throughout the polymer. Where's the request for a claim construction? That's what we asked for. The request for a claim construction. Yes. Well, it is argued here at page 520-21 is my understanding. Wait, wait. We want you to construe this phrase as this meaning. Where does it say that? We want you to construe. You're correct, Your Honor. It does not say that at this point. No, it doesn't. Thank you. Are there any other questions? No. Thank you. I thank both sides, and the case is submitted.